Rockingham
No. 87-062

TOWN OF RYE AND TOWN OF HAMPTON FALLS

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE
AND THE STATE OF NEW HAMPSHIRE,
DEPARTMENT OF TRANSPORTATION

March 29, 1988

*Nadeau Professional Offices*, of Portsmouth (*J. P. Nadeau* on the brief and orally), for the plaintiff Town of Rye.

*Backus, Meyer & Solomon*, of Manchester (*Bartram C. Branch, Jr.*, on the brief and orally), for the plaintiff Town of Hampton Falls.

*Sulloway, Hollis & Soden*, of Concord (*Margaret H. Nelson* on the brief and orally), for the defendant Public Service Company of New Hampshire.

*Stephen E. Merrill*, attorney general (*Michael J. Walls*, assistant attorney general, on the brief and orally), for the State Department of Transportation.

JOHNSON, J. The defendant Public Service Company of New Hampshire (PSNH), joined by the New Hampshire Department of Transportation (DOT), appeals an order of the Trial Court (*Murphy, J.*) permitting the Town of Rye to revoke the licenses which the town had granted PSNH to erect siren poles on town-maintained

rights-of-way as part of an evacuation plan for the Seabrook Nuclear Power Station. The court directed PSNH to remove those siren poles, as well as other siren poles which PSNH had erected in Rye and Hampton Falls on State-maintained highways. We reverse.

PSNH is the major owner of the Seabrook Nuclear Power Station. The plant is required by the federal Nuclear Regulatory Commission (NRC) to develop a Radiological Emergency Response Plan (RERP), which includes an evacuation plan, in order to be prepared for a potential accident at Seabrook Station. As part of its RERP, PSNH installed a public notification system consisting of sirens placed on poles located in several seacoast communities, including Rye and Hampton Falls. The poles are approximately sixty feet in height and have attached to them siren/public address systems each weighing approximately 500 pounds.

On July 9, 1984, PSNH submitted to the Rye Town Clerk an application for licenses for three poles, to be erected on town-maintained highways in Rye. Subsequently, on July 11, 1984, PSNH submitted to the DOT a separate application in order to obtain licenses for siren poles to be placed on State-maintained highways in Rye and Hampton Falls. On September 10, 1984, the Rye Board of Selectmen, pursuant to RSA 231:161, I(a), granted the licenses sought by the company. On September 20, 1984, the DOT gave PSNH permission to begin installing the siren poles. On or about November 7, 1985, PSNH commenced installing four siren poles in Rye on State rights-of-way and two poles on town-maintained highways.

On or about the same date, the Rye Board of Selectmen issued a cease and desist order against PSNH and revoked the pole licenses which it had issued on September 10, 1984. After PSNH refused to obey the cease and desist order, Rye instituted a "Petition For Declaratory Judgment With Prayers For Specific Performance" against PSNH, seeking (1) a ruling that the previously granted pole licenses on State and town highways were not properly authorized and (2) orders for their removal.

Hampton Falls was permitted to intervene in Rye's action, in order to seek the removal of siren poles which had been erected on State-maintained highways in that town pursuant to State authorization. Hampton Falls claimed the poles had been placed contrary to two consecutive town meeting votes which had expressly prohibited the installation of the siren poles unless and until the citizens of Hampton Falls approved an overall evacuation plan for Seabrook Station. PSNH had not erected any siren poles

on town-maintained highways in Hampton Falls because the Hampton Falls Board of Selectmen had denied licenses on the ground that the proposed emergency plan was inadequate to warn and protect the town's residents in the event of nuclear accident.

On November 26, 1986, a hearing was held on the petition of Rye and Hampton Falls, after which the trial court determined that the DOT was a necessary party to the towns' action and ordered the agency to file responsive pleadings.

On January 20, 1987, the trial court ordered the removal of all poles and siren/public address systems within the two towns at PSNH's expense within thirty days, whether located on State or municipal highways. This decision was based on the conclusion that the poles and sirens were not utility facilities, installations or structures within the meaning of RSA 231:160. The court determined that the licenses which Rye and the DOT had granted for the erection of siren poles had been granted without statutory authority and were therefore null and void. PSNH appeals the trial court's order.

PSNH argues that the trial court erred in ruling that RSA 231:160 does not apply to siren poles installed as part of a federally-mandated public notification system for Seabrook Station. We agree with PSNH that the trial court's construction of RSA 231:160 is unduly restrictive.

RSA 231:160 states:

> "Telegraph, television, telephone, electric light and electric power poles and structures and underground conduits and cables, with their respective attachments and appurtenances may be erected, installed and maintained in any public highways and the necessary and proper wires and cables may be supported on such poles and structures or carried across or placed under any such highway by any person, copartnership or corporation as provided in this subdivision and not otherwise."

The trial court determined that the legislature did not intend to allow utility companies to erect poles for the purpose of warning citizens of a nuclear emergency, but only for the transmission of telegraph, television and telephone signals and electric light and power. Hence, the trial court found that the licenses which had been granted to PSNH by Rye and the DOT for the erection of siren poles had been granted without statutory authority and were void.

■■ We begin our analysis with an interpretation of the applicable statutes. In any case involving the construction of a statute, the starting point must be the language itself, and plain and unambiguous language will be given effect. *Theresa S. v. Sup't of YDC*, 126 N.H. 53, 55, 489 A.2d 592, 593 (1985); *Dover Professional Fire Officers Assoc. v. City of Dover*, 124 N.H. 165, 169, 470 A.2d 866, 868 (1983); *Sutherland Stat Const* § 46.01 (4th ed. 1984). Words and phrases will be given their usual and common meaning unless the statute itself suggests otherwise. *Appeal of Public Serv. Co. of N.H.*, 125 N.H. 46, 52, 480 A.2d 20, 24 (1984).

■ A subdivision of RSA chapter 231 provides for "Lines of Telegraph and Other Companies in Highways," and RSA 231:159 makes the provisions of that subdivision applicable to all cities and towns. RSA 231:161, VI states that "[t]he holder of such a license [to erect poles], shall . . . be entitled . . . to erect . . . poles [and] structures . . . and to place upon such poles and structures the necessary . . . attachments and appurtenances which are required in the reasonable and proper operation of the business carried on by such licensee . . . ." We conclude that sirens are "attachments" within the meaning of RSA 231:160 and RSA 231:161, VI.

■ The selectmen of Rye lack authority to revoke the licenses they granted to PSNH, or to deny applications for licenses to erect three siren poles on town-maintained highways, for any reason other than a reason relating to "the safe, free and convenient use for public travel of the highway . . . ," which is the criterion for the exercise of the selectmen's authority under the statute; and no safety-based justification for the revocation was articulated by the town. RSA 231:168.

■ In *Vernet v. Town of Exeter*, 129 N.H. 34, 523 A.2d 48 (1986), we concluded that RSA chapter 107-B requires that the State civil defense agency "must enlist the *aid* of the towns when preparing a [R]ERP for each of the affected towns, so that input will be received from each of the affected areas. This does not, however, give a town . . . veto power over [R]ERPs developed by the State civil defense agency." *Id.* at 39, 523 A.2d at 51. (Emphasis in original.) Similarly, RSA 231:159 *et seq.* do not give a town veto power over the erection of siren poles, pursuant to a RERP. Hampton Falls lacked authority to prohibit either cooperation by selectmen with radiological emergency response planning for Seabrook Station, or construction by PSNH on State highways in Hampton Falls of any installations necessary for the implementation of a RERP.

■ In a closely related case, *Public Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380 (1st Cir. 1987), PSNH's request for a preliminary injunction to allow its siren poles to remain in place was denied because PSNH failed to prove a likelihood of success in its argument that Massachusetts statutes permit the erection of siren poles for the Seabrook evacuation plan. The key Massachusetts statute in question, ch. 166, § 21, refers to the "transmission of electricity" for various purposes and permits a company incorporated for such transmission to construct "lines for such transmission upon, along, under and across the public ways . . . ." MASS. GEN. L. ch. 166, § 21. The New Hampshire statutes vary in two significant ways: (1) RSA 231:160 does not refer to poles used to "transmit" power; and (2) there is no Massachusetts counterpart to RSA 231:161, VI which allows for the erection of poles "which are required in the reasonable and proper operation of the business carried on by such licensee . . . ." The New Hampshire statute, like the Massachusetts statute, has been amended from time to time as new technology has developed. However, we conclude that RSA 231:161, VI made it unnecessary for our legislature to amend the statute to specifically permit siren poles, since such poles are necessary for PSNH to carry out its business in supplying the electrical needs of its customers.

■ We hold that the trial court erred in ruling that the pole licenses had been granted without statutory authority and hence were null and void, and in ordering PSNH to remove the poles and sirens which PSNH had erected and placed in Rye and Hampton Falls. We reverse the decision of the trial court.

*Reversed.*

BATCHELDER, J., dissented; the others concurred.

BATCHELDER, J., dissenting: Because I do not read RSA 231:160 and :161, VI as broadly as the majority, I would uphold the trial court and therefore respectfully dissent.