Sullivan
No. 7741

LAND/VEST PROPERTIES, INC.

v.

TOWN OF PLAINFIELD

October 24, 1977

818

*Stebbins & Bradley,* of Hanover (*Mr. Michael L. Slive* orally), for the plaintiff.

*Leahy & Denault,* of Claremont (*Mr. Peter Hoe Burling* orally), for the defendant.

BOIS, J.    Pursuant to RSA 36:19, :21 (Supp. 1975), and :22, the defendant town planning board denied plaintiff developer's application for subdivision approval after plaintiff refused to comply with the defendant's precondition to approval. The planning board conditioned its approval on the plaintiff's upgrading at its own expense and to standards established by the town the two class V highways leading to but located outside plaintiff's proposed subdivision.

The plaintiff challenges the propriety of this subdivision exaction and claims that defendant's denial of subdivision approval, on the basis of plaintiff's refusal to provide the required offsite improvements, is unlawful. Claiming illegality in the extent of the required improvements and the imposition of their entire expense, plaintiff brought this action seeking reversal of the board's decision and an order compelling approval of its application without precondition. Hearing was before *Johnson,* J., who found that the precondition "exact(s) an unreasonable road building cost from this plaintiff as a price for subdivision approval." The court further found "that the conditions [sic] . . . constitutes an unreasonable attempt to shift a town burden to a single developer." The case was ordered "remanded to the Planning Board with the instruction that off-site exactions may be required only in proportion as such improvements bear a rational nexus to the needs created by the subdivision and the benefits conferred upon the subdivision." All questions of law raised by the pleadings and at trial were reserved and transferred.

Plaintiff owns two parcels of undeveloped land in Plainfield. Proposing to divide this land into fifteen lots ranging in size from approximately fifteen to ninety-six acres, plaintiff applied for subdivision approval. Two class V highways known as Black Hill Road

and Porter Road provide the only access to plaintiff's proposed subdivision. Lying completely offsite, Black Hill Road becomes Porter Road, which continues as a class V highway until it enters plaintiff's proposed subdivision, where it terminates. The relevant distance over the offsite extent of Black Hill and Porter Roads is 5,000 feet. Three of the plaintiff's lots border Porter Road for approximately 950 feet. Plaintiff has no frontage on Black Hill Road. There are presently two year-round residences and, in addition to the plaintiff, three other owners of undeveloped land located on/and fronting these access roads. Both of these roads are maintained by the defendant at a standard marginally adequate to handle the present traffic, and an emergency would create a hazard for access due to their present condition. Increased traffic from plaintiff's proposed fifteen lots would also increase the present danger. As a precondition to subdivision approval, the defendant requires the plaintiff to unilaterally finance the upgrading of these offsite access roads to safety standards established by the town's subdivision regulations.

RSA 36:21 (Supp. 1975) provides that town planning boards may promulgate regulations which "provide against such scattered or premature subdivision of land as would involve danger or injury to . . . safety . . . by reason of the lack of . . . transportation . . . or other public services, or necessitate an excessive expenditure of public funds for the supply of such services." RSA 36:22 additionally authorizes the defendant to "stipulate, as a condition precedent to the approval of [the subdivision], the extent to which and the manner in which streets shall be graded and improved. . . ." These statutes "plainly empower the planning board to [consider] offsite factors . . . insofar as they render subdivisions 'scattered or premature,'" *Garipay v. Town of Hanover*, 116 N.H. 34, 36, 351 A.2d 64, 65 (1976), and to condition approval of the plaintiff's proposal on an upgrading of these offsite factors through improvements necessitated by the subdivision. *KBW, Inc. v. Town of Bennington*, 115 N.H. 392, 342 A.2d 653 (1975).

As a threshold determination, "[t]he board must ascertain what amount of development, in relation to what quantum of services available, will present the [danger or injury] described in the statute . . . . At the point where such hazard is created, further development becomes premature." *Garipay*, 116 N.H. at 36, 351 A.2d at 65. The trial court found that traffic over Black Hill Road

and Porter Road, due to the proposed subdivision, will increase the hazard that "an emergency would create as things stand now." It further found that "there is no question there must be improvement to the access road[s] if the subdivision is fully developed and homes are built." The record supports these findings and compels the conclusion that, with respect to the criterion of safety, the proposed subdivision was "premature." The town, therefore, could legitimately condition its approval of the subdivision on the provision of improvements to the offsite access roads. *See KBW, Inc.,* 115 N.H. 392, 342 A.2d 653 (1975). As an exercise of the state's police power, however, such condition must not only be reasonably necessary to protect the public safety but also otherwise constitutional. *See Blevens v. City of Manchester,* 103 N.H. 284, 170 A.2d 121 (1961); *Ayres v. City Council of Los Angeles,* 34 Cal. 2d 31, 207 P.2d 1 (1949).

In addition to specifying the standards that offsite improvements must satisfy as a precondition to subdivision approval, defendant imposed complete financial responsibility for these improvements upon the subdivider. This court's task in determining the propriety of such one-sided cost allocation requires "judgments about the . . . ambit of freedom from official regulation that is implicit in [this state's constitutional] concept of private property." Johnston, *Constitutionality of Subdivision Control Exactions: The Quest for a Rationale,* 52 Cornell L.Q. 871, 922 (1967). *Metzger v. Brentwood,* 117 N.H. 497, 374 A.2d 954 (1977); *Robbins v. Laconia,* 117 N.H. 235, 371 A.2d 1167 (1977); N.H. CONST. pt. I, art. 2.

The town takes the position that:

> in determining the proper distribution of subdivision costs between the subdivider and the municipality, the appropriate test is the "but-for" test. In other words, the Town has consistently asked the question[,] "But for this subdivision, would these improvements be required now?" Finding, as it did, that the Answer to this inquiry is "no," the Planning Board placed the burden of improving the road on the party whose development proposal made the improvements necessary.

Though a majority of this court in *KBW, Inc.,* 115 N.H. 392, 342 A.2d 653 (1975), upheld a condition to subdivision approval that required the subdivider to bear the total cost of offsite improvements necessitated by his proposed subdivision, defendant's reli-

ance on *KBW* in this case is misplaced. This court found in *KBW* that "the improvements . . . were required *only* because of the plaintiff's proposed subdivision, *since* [these improvements] would not extend beyond the frontage of plaintiff's land and no residences are presently situated on the road within the town beyond the frontage of plaintiff's land." *Id.* at 395, 342 A.2d at 655 (emphasis added). Here, however, two residences and three undeveloped lots, in addition to plaintiff's land, border on the access roads; moreover, the improvements required by defendant extend well beyond the proposed subdivision's frontage. We note that "[plaintiff] agrees and understands its obligation to improve that part of the . . . highway and which is approximately 4,800 feet in distance contained within the bounds of the development." Since necessary improvements to the access roads here are feasible, the case of *Garipay supra,* involving road improvements which were not feasible, is also factually distinguishable.

■ Defendant asserts that its "but-for" test "balances" the *burden* imposed on the town by the subdivision against the *burden* imposed on the subdivider by the town's precondition for subdivision approval. However, for the reasons set out below, it is our view that since defendant's test fails to give corresponding consideration to *benefits,* such a test is inconsistent with the protection afforded private property under the New Hampshire Constitution.

Part I, article 12 of the New Hampshire Constitution requires that "no part of a man's property shall be . . . applied to public uses . . . without his own consent, or that of the representative body of the people." This provision allows the application of private property to public use only "on the implied condition . . . that [the landowner] is to receive a just compensation." *Great Falls Mfg. Co. v. Fernald,* 47 N.H. 444, 455 (1867). The defendant's but-for test dictates that the plaintiff provide necessary offsite improvements at its sole expense. This requirement applies plaintiff's property to public use, for it is obvious that the public will benefit from improvements in Porter and Black Hill Roads, which are both public class V highways bordered by other developed and undeveloped taxable properties. Defendant's subdivision exaction, therefore, brings into play part I, article 12 of the constitution. Consequently, the town's power of conditional approval is necessarily limited by the constitutional requirement of just compensation. The question before us, in determining the permissible allocation of the cost of the subdivision exaction, is whether de-

fendant's but-for test fairly serves the principle of just compensation; and, if it does not, what constitutes the proper test.

In resolving this issue, analogy may be made to the law governing special assessments. The special assessment a town may charge a landowner for a public improvement which, in part, specially benefits his property can be compared to defendant's subdivision exaction. *See* 1961 Wisc. L. Rev. 310, 321, 9 Vill. L. Rev. 294, 299 (1964). To the extent that it applies private property to public use, the special assessment, like the subdivision exaction, is restricted by the principle of just compensation implied in part I, article 12 of our constitution. Part II, article 5 of our constitution empowers the towns "to impose and levy proportional and reasonable assessments." " '[S]pecial assessments upon property for the cost of public improvements are in violation of our Constitution if they are in substantial excess of the [equivalent in special] benefits received.' " *Manchester v. Straw*, 86 N.H. 390, 392, 169 A. 592, 593 (1933), *citing White v. Gove*, 183 Mass. 333, 335, 67 N.E. 359, 360 (1903); *see Yencing v. Concord*, 116 N.H. 580, 364 A.2d 875 (1976). These special benefits constitute the just compensation to which the specially assessed landowner is entitled. *See Opinion of the Justices*, 4 N.H. 565 (1829).

In view of the analogous deprivation of property worked by a special assessment and a subdivision exaction, it would be plainly unfair to circumvent in the subdivision context the protection guaranteed by the proportionality required of special assessments. This special assessment analogy is consistent with Mr. Justice Holmes' observation that "a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 416 (1922). That "way" is paved by our constitution's respect for private property and the fundamental fairness guaranteed by just (*i.e.*, proportional) compensation.

■    Accordingly, we conclude that where offsite improvements can properly be required of a subdivider, the subdivider can be compelled "only to bear that portion of the cost which bears a rational nexus to the needs created by, and [special] benefits conferred upon, the subdivision." *Longridge Builders, Inc. v. Planning Bd. of Princeton Tp.*, 52 N.J. 348, 350, 245 A.2d 336, 337 (1968). The proportionality test contemplates the burdens imposed upon the town "either forthwith or in the demonstrably immediate fu-

ture," *181, Inc. v. Salem County Planning Bd.*, 133 N.J. Super. 350, 359, 336 A.2d 501, 506 (1975); however, "future and indirect benefits accruing to [the subdivision] from [the] improvement can be considered, since permanent improvements are not made solely with reference to present conditions." E. McQuillin, Municipal Corporations § 38.33 (3d ed. 1970).

On the basis of an impermissible but-for test, defendant required as a condition to subdivision approval that plaintiff bear the sole financial responsibility for upgrading Porter and Black Hill Roads. The town's denial of plaintiff's application, due to plaintiff's noncompliance with this condition was unlawful. *See* 3 A. Rathkopf, The Law of Zoning and Planning § 71-82 (3d ed. 1972). The lower court's finding that "the conditions [imposed on the plaintiff constitute] an unreasonable attempt to shift a town burden to a single developer" is in accord with our conclusion and, thus, within the statutory mandate for court review of planning board decisions. RSA 36:34 (Supp. 1975).

■ Although the trial court proceeded under the proper proportionality test in determining the appropriate allocation of the costs for necessary improvements, we cannot agree with its application of that test. The court ordered that "since there are 10,000 feet of frontage on [the access roads], and the developers [sic] own 950 feet, then [imposing on plaintiff] 9.5% of the [cost of the] improvements deemed necessary [by the town] would be a reasonable condition." Compliance with the proportionality test, however, cannot rest on a frontage test alone. No single factor can be determinative of the appropriate mode of apportionment in this case. A nonexhaustive categorization of such factors may include the standard to which the town presently maintains the roads, the frontage of the proposed subdivision, the potential traffic increase necessitated by the proposed subdivision, the character and potential for development of the neighborhood served by these access roads, and the number of residences presently fronting on or normally trafficking these roads.

■ Though not presented as an issue which we can properly resolve on this appeal, we observe that a situation may arise where the expense imposed on a municipality by an appropriate allocation of the cost for anticipated improvements would necessitate an excessive expenditure of public funds. Our opinion, however, is not destructive of the regulatory power granted the municipality by

RSA 36:21 (Supp. 1975) to provide against subdivisions that "necessitate an excessive expenditure of public funds for the supply of [public] services" needed to preclude "danger or injury to health, safety, or prosperity . . . ." Where a town is faced with such an "excessive expenditure," its otherwise "fair share" of the cost may be adjusted to accommodate the municipality's ability to pay. Without this limitation, a private developer could single-handedly require an increase in the municipal tax burden. This ceiling is necessary, therefore, to preserve the legislature's intent that the municipality, in the exercise of reasonable discretion, retain ultimate responsibility for its financial integrity. To accommodate this limitation on the municipality's share of the anticipated expenditures, the developer might alter his proposal in order to lessen the subdivision's demand for necessary services. Apportionment could then be adjusted for the resulting decrease in total expenses subject to allocation. Alternatively, the developer may choose to unilaterally bear the portion of the municipal share that the town cannot reasonably finance.

Lastly, we note that plaintiff has contested not merely the defendant's *allocation* of the cost of the required improvements but the proper *extent* of those improvements as well. The court found that the town's standards for improvements to the access roads were not reasonably required to protect the public safety. This finding is supported by sufficient evidence and thus compels the conclusion that the *extent* of improvements required by the defendant as a precondition to subdivision approval constitutes an impermissible and unenforceable exercise of defendant's planning power. *See State v. Cox,* 91 N.H. 137, 16 A.2d 508 (1940), *aff'd,* 312 U.S. 569 (1941); E. McQuillin, Municipal Corporations § 38.02 (3d ed. 1970).

We remand to the trial court to determine the proper extent of improvements to Black Hill and Porter Roads that defendant can require as a precondition to subdivision approval. We further remand for a determination, consistent with this opinion, of the appropriate allocation between plaintiff and defendant of the costs for those improvements.

*Remanded.*

All concurred.