Rockingham
No. 89-207

NEW ENGLAND BRICKMASTER, INC.

v.

TOWN OF SALEM & a.

November 9, 1990

*Law Offices of Reginald L. Marden P.C.*, of Andover, Massachusetts (*Reginald L. Marden* and *Vincent Youmatz* on the brief, and *Mr. Marden* orally), for the plaintiff.

*Donahue, McCaffrey & Tucker*, of Exeter (*Robert D. Ciandella* on the brief and orally), for the defendants.

*Timothy Bates*, of Concord, by brief for the New Hampshire Municipal Association, as *amicus curiae.*

JOHNSON, J. This land use case involves an appeal from an order of the Superior Court (*McHugh*, J.) affirming the decision of the Town of Salem Planning Board (board) to conditionally approve the plaintiff's site plan application. The plaintiff, New England Brickmaster, Inc. (Brickmaster), argues that neither the enabling statute, RSA 674:43 and :44, nor the town's regulations authorize the board to impose the condition, which requires that the plaintiff pay a portion of the cost of certain off-site roadway improvements. We find Brickmaster's arguments unpersuasive and affirm the trial court's decision.

On August 15, 1988, Brickmaster applied to the board for approval of a site plan to construct two industrial buildings on adjoining lots of land on Northwestern Drive in Salem. The proposed buildings were to be constructed on an eighteen-lot industrial subdivision which had received subdivision approval from the board approximately a year earlier. The board approved Brickmaster's site plan on October 26, 1988, but conditioned the approval on the requirement that Brickmaster contribute $39,397.51 for future off-site roadway improvements. The board's decision was based on the results of a study, commissioned by the town, which identifies problem traffic areas, suggests corrective changes to the roadways, and gives preliminary cost estimates for construction of those identified roadway improvements. We note that Brickmaster has supplied a three-year letter of credit in the amount of $39,397.51 to satisfy the condition, and that if the improvements are not underway by the end of that period, the letter of credit will expire and not be renewed.

Following the board's decision, Brickmaster filed a petition in superior court to enjoin the board from conditioning the commencement of construction on the site on the payment of the $39,397.51. The Town of Salem and the members of the planning board were named as defendants (hereinafter "the defendant"). The Court (*Mohl*, J.), finding that Brickmaster was not likely to succeed on the merits of its claim, denied the request for injunctive relief. Brickmaster then appealed the board's decision to the superior court, pursuant to RSA 677:15. The Court (*McHugh*, J.) affirmed the board's decision following a hearing on the merits.

On further appeal to this court, Brickmaster properly raises two legal issues: first, whether RSA 674:43 and :44, governing site plan review, provide local planning boards with the authority to condition

the approval of site plans on payment for off-site improvements; and second, whether the site plan review regulations adopted by the Town of Salem authorize the board to collect funds or allocate costs for off-site improvements as part of the site plan approval process. Additionally, Brickmaster argues in its brief that the actions of the board constitute an unconstitutional taking. As this issue was neither raised below nor mentioned in Brickmaster's notice of appeal, we will not consider it here. *Dombrowski v. Dombrowski*, 131 N.H. 654, 662, 559 A.2d 828, 833 (1989); *see also* SUP. CT. R. 16(3)(b). Finally, since Brickmaster did not appeal the factual issue of whether the amount it was required to pay for off-site improvements bore a rational nexus to the proposed change in use of the site, *see Land/ Vest Props., Inc. v. Town of Plainfield*, 117 N.H. 817, 823, 379 A.2d 200, 204 (1977), that issue is not before us.

I. *Statutory Authority*

■　As a preliminary matter, we note that planning boards have the authority to impose conditions upon the approval of a site plan. *See* RSA 676:4, I(c) (Supp. 1989); RSA 674:44, IV (Supp. 1989); *see also Sklar Realty v. Town of Merrimack*, 125 N.H. 321, 327, 480 A.2d 149, 152 (1984). Thus, the question here is whether the board was authorized to impose the particular off-site roadway improvement condition at issue in this case.

■　To determine the meaning of a statute, we first look to see if the language used is clear and unambiguous. *See Town of Rye v. Public Serv. Co. of N.H.*, 130 N.H. 365, 369, 540 A.2d 1233, 1235, *cert. denied*, 488 U.S. 981 (1988). Both the plaintiff and the defendant contend that the statutory language relevant to this dispute clearly supports their respective positions. Brickmaster asserts that the power to condition site plan approval on the funding of off-site improvements is not among the powers granted to planning boards by the legislature in RSA 674:43 and :44. The defendant, on the other hand, argues that RSA 674:44, II(e) and RSA 674:44, IV (Supp. 1989) clearly authorize planning boards to condition site plan approval on the improvement of off-site streets. We find neither argument to be persuasive.

Brickmaster offers several arguments in support of its position. First, it points out that nothing in RSA 674:44 specifically addresses off-site improvements. Second, Brickmaster maintains that the provisions of RSA 674:44 logically relate to on-site conditions. It argues

that this position is bolstered by the fact that one provision, RSA 674:44, II(d), refers to "streets within the site."

We find that these arguments offer no support for Brickmaster's contention that RSA 674:44 clearly provides no authority for a planning board to condition site plan approval on off-site improvements. Nothing in the statute clearly limits its scope to on-site improvements. At best, Brickmaster's arguments are relevant to the interpretation of the statute only if it is found to be ambiguous. Even in that context, we find them to be unpersuasive. As for RSA 674:44, II(d), its reference to streets within the site is logical in view of its purpose, which is to require that those streets properly coordinate with other features of the town. Its language creates no inference concerning the interpretation of "streets" in other provisions of the statute.

The defendant contends that two provisions provide clear statutory authority for the board's actions: RSA 674:44, II(e), which states that site plan review regulations may require "suitably located streets of sufficient width to accommodate existing and prospective traffic"; and RSA 674:44, IV (Supp. 1989), which states that such regulations may condition approval on "the extent to which and the manner in which streets shall be graded and improved." The defendant argues that these provisions necessarily refer to off-site streets. This is so, the defendant contends, because land awaiting site plan approval would be undeveloped, and such land could not yet have streets which could be improved, or over which any existing traffic could flow.

We find this argument to be flawed. Site plan approval may also be required when the use of land is to be changed, as well as when the land is initially developed. The legislature made this clear in 1987 when it amended RSA 674:43, I (Supp. 1989) to expressly authorize the review of site plans for the "change or expansion of use" of land. *See also* RSA 674:44, II(a) (Supp. 1989). It follows that land pending site plan approval may have existing streets and traffic. Therefore, while the provisions cited might be interpreted as providing planning boards with the authority to condition site plan approval on off-site improvements, the language does not on its face require such a result.

In addition, the defendant argues that RSA 674:44, II(e) cannot be construed consistently with RSA 674:44, II(d) if the streets referred to in the former refer only to those on-site. However, as discussed above, the language of RSA 674:44, II(d) does not clearly fix the

meaning of the word "streets" in RSA 674:44, II(e), nor does it resolve the ambiguity of that word's scope.

◼ The provisions discussed above are ambiguous as to whether a planning board has the authority to condition site plan approval on an applicant's contribution to off-site improvements. We must therefore look to the statute as a whole in order to determine the intent of the legislature in this regard. *See Sklar Realty v. Town of Merrimack*, 125 N.H. at 327, 480 A.2d at 152.

◼ Brickmaster argues that the statutes at issue must be construed so as to prohibit conditions like that imposed by the board if they are to be consistent with the statutory framework of which they are a part, and with the relevant case law. This argument is based on differences between the provisions concerning site plan review, RSA 674:43 and :44, and similar provisions regarding the regulation of subdivisions, RSA 674:35 and :36. It has been established that planning boards may condition the approval of subdivisions on the applicant's making contributions to off-site improvements. *Land/Vest Props, Inc. v. Town of Plainfield*, 117 N.H. 817, 820, 379 A.2d 200, 202–03 (1977). Brickmaster asserts that it is RSA 674:36, II(a) and RSA 674:36, III(c) (Supp. 1989) which authorize planning boards to exercise this power in the subdivision approval process, and points out that similar provisions do not exist in the site plan review enabling statute. Therefore, Brickmaster argues, interpreting RSA 674:44 to grant the same power at the site plan approval stage would render those provisions "redundant or superfluous." *See Merrill v. Great Bay Disposal Serv.*, 125 N.H. 540, 543, 484 A.2d 1101, 1103 (1984).

We first address RSA 674:36, III(c) (Supp. 1989). RSA 674:36, III (Supp. 1989) and RSA 674:44, IV (Supp. 1989) are substantially identical, with the exception that the latter lacks language equivalent to that contained in RSA 674:36, III(c) (Supp. 1989). RSA 674:36, III(c) (Supp. 1989) authorizes the municipality to assess "the owners of the property within the subdivision" for the cost of improvements. However, a planning board need not invoke this provision to condition either subdivision or site plan approval on off-site improvement. Rather, RSA 674:36, III(c) (Supp. 1989) enables municipalities to require developers which buy property after it has been subdivided to pay the costs of unfulfilled subdivision requirements. This option is not necessary at the site plan review stage, as the developer will generally be the party seeking approval. Therefore, to interpret RSA 674:44 as granting planning boards the authority to condition

site plan approval on off-site improvements would not render RSA 674:36, III(c) (Supp. 1989) superfluous.

As for RSA 674:36, II(a), that provision states that subdivision regulations may provide

"against such scattered or premature subdivision of land as would involve danger or injury to health, safety, or prosperity by reason of the lack of water supply, drainage, transportation, schools, fire protection, or other public services, or necessitate the excessive expenditure of public funds for the supply of such services."

Brickmaster, relying on *Land/Vest*, maintains that any consideration of off-site factors necessarily derives only from the "scattered or premature subdivision" language of RSA 674:36, II(a). We disagree.

In *Land/Vest*, the planning board of the town of Plainfield required, as a condition of subdivision approval, that the plaintiff, a developer, finance the entire cost of upgrading two off-site access roads according to safety standards set by the town. *Land/Vest*, 117 N.H. at 820, 379 A.2d at 202. This court found that the predecessor of RSA 674:36, II(a), found in RSA 36:22, empowered the planning board to condition approval of the plaintiff's application on the upgrading of the roads, which, due to their condition, rendered the proposed subdivision "premature." *Land/Vest*, 117 N.H. at 821, 379 A.2d at 202–03. We suggested that the "graded and improved" language of RSA 36:22 (current version at RSA 674:36, III (Supp. 1989)), which is identical to that now found in RSA 674:44, IV (Supp. 1989), quoted above, might also provide the requisite authority. *Land/Vest*, 117 N.H. at 820, 379 A.2d at 202–03. We then discussed the extent to which the town could require the plaintiff to contribute to the upgrading of the roads, and held "that where offsite improvements can properly be required of a subdivider, the subdivider can be compelled 'only to bear that portion of the cost which bears a rational nexus to the needs created by, and [special] benefits conferred upon, the subdivision.'" *Id.* at 823, 379 A.2d at 204 (citation omitted).

Contrary to the plaintiff's interpretation of *Land/Vest*, that decision does not state that off-site improvements may be required only if a proposed subdivision is scattered or premature. The language that the plaintiff stresses, that "[t]hese statutes 'plainly empower the planning board to [consider] offsite factors . . . insofar as they render subdivisions "scattered or premature,"'" *id.* at 820, 379 A.2d at 202–03 (quoting *Garipay v. Town of Hanover*, 116 N.H. 34, 36, 351 A.2d 64, 65 (1976)), does not say that the planning board's power

exists *only* in that situation. *Land/Vest* did concern a scattered or premature subdivision, making the previous version of RSA 674:36, II(a) applicable. But we did not state that in cases where RSA 674:36, II(a) is not applicable there are no other provisions which can authorize conditions based on off-site factors. Accordingly, *Land/Vest* does not preclude an interpretation of "streets," as found in RSA 674:36, II(e) and RSA 674:36, III (Supp. 1989), that includes streets both on and off the site.

Indeed, the decisions of this court suggest that alternative authority for the conditioning of subdivision on off-site improvements does exist. In *Land/Vest*, our reference to the "graded and improved" language of RSA 36:22, *Land/Vest*, 117 N.H. at 820, 379 A.2d at 202–03, as discussed above, makes sense only if "streets" is interpreted to include off-site streets. If "streets" is not so interpreted, the language we cited would be irrelevant to the analysis of the situation in *Land/Vest*, which concerned off-site streets. Similarly, in *KBW, Inc. v. Bennington*, 115 N.H. 392, 342 A.2d 653 (1975), this court found that the authority of planning boards in approving subdivisions "extended to off-site improvements and obligations necessitated by the proposed development." *Id.* at 395, 342 A.2d at 655. Again, this holding was based in part on language now found in RSA 674:36, II(e) and RSA 674:36, III (Supp. 1989). *See KBW, Inc. v. Bennington, supra* at 394–95, 342 A.2d at 654–55. While *KBW, Inc.* and *Land/Vest* were decided in the context of subdivision review, RSA 674:44, II(e) and RSA 674:44, IV (Supp.' 1989) of the site plan review statutes contain language identical to RSA 674:36, II(e) and RSA 674:36, III (Supp. 1989). We find no reason why this identical language in RSA 674:44 should not be given the same meaning, and likewise include off-site streets.

Such an interpretation would not make RSA 674:36, II(a) superfluous. That provision is broad in scope, in that it states that planning boards may consider a variety of off-site factors, such as lack of schools, in guarding against scattered and premature subdivision. Such considerations are beyond the scope of the provisions of RSA 674:36, II(e) and RSA 674:36, III (Supp. 1989) discussed above. Thus, acknowledging that those provisions also authorize consideration of some off-site factors does not necessarily render RSA 674:36, II(a) superfluous.

■■ In addition, this interpretation of "streets" is required by careful consideration of the legislative intent of this statutory scheme. Where statutory language is ambiguous, we will construe it

in the way "which best harmonizes with the context and with the apparent policy of the legislature." *Appeal of Hoyt Rental & Leasing Co.*, 130 N.H. 130, 132, 536 A.2d 172, 173 (1987). Here, it is undisputed that, at least in the area of subdivision review, the legislature intended to give municipalities a tool for controlling their expenditures without jeopardizing the safety of the public, by allowing them to require those who would change the use of land to make fair contributions towards the costs of any required increase in services. *See Land/Vest*, 117 N.H. at 820–21, 379 A.2d at 202–03; *cf. Glick v. Town of Ossipee*, 130 N.H. 643, 648, 547 A.2d 231, 234 (1988) (legislative policy to allow towns to control expenditures by restricting development on inadequate roads). But to limit this power, as Brickmaster suggests, solely to the subdivision stage would render it largely useless. Given the variety of possible uses of non-residential property and the differences in the possible scales of multi-family housing developments, it will often be impossible for planning boards to make an adequate determination at the subdivision stage of what off-site improvements, if any, will eventually be required. In such cases, the effect would be to make the rational nexus test an impossible standard to satisfy. Moreover, substantial development, especially industrial and commercial, can take place without subdivision. In either situation, towns would be left without the ability to control the expansion of public services. Thus, limiting conditions requiring contributions towards off-site improvements to the subdivision stage would both frustrate the purpose of the legislature and render our decision in *Land/Vest* largely meaningless.

■ This court will not interpret ambiguous statutory language in a way that would "lead[ ] to an absurd result and nullify[ ] to an appreciable extent the purpose of the statute." *State v. Hart*, 130 N.H. 325, 327, 540 A.2d 859, 860 (1988) (citation omitted). We find that Brickmaster's interpretation of RSA 674:44 would have just such a result. The legislature intended to give planning boards "the tools to do their job," N.H.S. JOUR. 745 (1985); it follows that the legislature intended to grant planning boards the authority to condition approvals on the funding of off-site improvements at the subdivision stage, the site plan stage, or both, as the situation warrants.

■ Therefore, we hold that the "streets" referred to in RSA 674:44, II(e) and RSA 674:44, IV (Supp. 1989) refer to streets both on and off the site, and that planning boards are empowered by RSA 674:43 and :44 to promulgate regulations which allow for the conditional approval of a site plan by requiring an applicant to contribute

funds to the construction of off-site improvements bearing a rational nexus to the development. In view of the foregoing conclusions, we need not consider whether the general authority contained in RSA 674:44, II(h) would support the board's action in this case, as suggested by the *amicus curiae*.

II. *Regulatory Authority*

 We now consider Brickmaster's second legal issue: whether the town's regulations allow the board to collect funds or allocate costs for off-site improvements. Brickmaster raises three arguments. First, it contends that a review of the board's site plan review regulations, set forth in Chapter 268 of the Salem Code, uncovers no provisions governing the planning board's ability to collect or allocate such costs. We find, however, that such authority is clearly set out in section 268-8. That section provides that the board may make conditions when considering and approving site plans in regard to achieving "[m]aximum safety of traffic access and egress," SALEM CODE § 268-8, A(1), and the "[i]nstallation of public improvements and amenities, at the expense of the applicant, . . . [including] improvements to existing roadway[s] . . . in order to adequately serve the proposed site." *Id.* at § 268-8, A(6).

 Next, Brickmaster argues that the regulations are inadequate because they do not specify the procedure to be followed for determining the proportion of the costs of off-site improvements to to be paid by each applicant. Brickmaster contends that the board is powerless to apply the cost allocation formula until that formula is adopted pursuant to RSA 675:6, which requires notice and hearing. RSA 674:44, III(a) does require that site plan review regulations include "the procedures which the board shall follow in reviewing site plans," but this provision should not be taken to require that every detail relating to the actions of a planning board must be spelled out in its regulations. To do so would create an unreasonable burden on planning boards, as well as those wishing to familiarize themselves with the regulations. Moreover, it is impractical to include the exact method of cost allocation in the regulations, as the formula might differ according to the circumstances. We do not see any reason why notice and hearing on the cost allocation method need be required, nor do we believe that the legislature so intended. The interests of landowners are sufficiently protected without such a requirement. The board's regulations give notice that site plan approval could be conditioned on contributions to off-site improvements; the actual

method of allocation used in any specific case is subject to the rational nexus test. *See Land/Vest Props., Inc. v. Town of Plainfield,* 117 N.H. at 823, 379 A.2d at 204.

■ Brickmaster's final argument is that the board may not condition site plan approval on a contribution to the off-site improvements recommended by the traffic study, when neither that study nor its recommendations have been adopted by the Town of Salem. Since Brickmaster has cited no authority in support of this contention, and we have not been able to discern any, we find this argument to be meritless.

Accordingly, we hold that the Town of Salem was authorized by statute and its own regulations to assess the plaintiff for part of the cost of off-site street improvements as a condition of site plan approval.

*Affirmed.*

HORTON, J., did not sit; the others concurred.