Hillsborough
No. 91-290

### ALAN G. LAMPERT AND ALAN V. LIGOURI, TRUSTEES, UNICORN PARK REALTY TRUST

v.

### TOWN OF HUDSON

September 1, 1992

*Prunier & Leonard P.A.*, of Nashua, (*Thomas J. Leonard* on the brief and orally), for the plaintiffs.

*John J. Ratigan*, of Hudson, by brief and orally, for the defendant.

BROCK, C.J. The Town of Hudson (town) appeals the Superior Court's (*Murphy*, J.) grant of the plaintiffs' motion for summary

judgment. The superior court reversed a decision of the Hudson planning board (board). The board had approved the plaintiffs' site plan subject to the condition that the plaintiffs pay a "corridor allocation procedure fee," also known as an impact fee, designed to allocate the predicted expense of improvements and increased services resulting from the applicants' development. For the reasons set forth below, we reverse and remand.

The plaintiffs, Alan G. Lampert and Alan V. Ligouri, Trustees of the Unicorn Park Realty Trust, own a parcel of land in the town of Hudson which has been approved as an industrial subdivision. They applied to the board for site plan review of newly proposed buildings on three of the lots in the subdivision. In July 1990, the board approved the site plan subject to the plaintiffs paying an impact fee. The fee was to be computed by the town's traffic engineering consulting firm based on the results of traffic corridor studies completed by the firm at the board's request. The plaintiffs appealed the board's decision to the superior court pursuant to RSA 677:15, challenging its authority to condition site plan approval on payment of the fee. The court reversed the decision, ruling that the town's site plan review regulations have no specific provision authorizing the board to assess an impact fee as a condition of site plan approval.

On appeal, the town argues that, in light of our decision in *New England Brickmaster, Inc. v. Town of Salem*, 133 N.H. 655, 582 A.2d 601 (1990), the trial court erred as a matter of law by failing to construe the town's site plan regulations as authorizing the board to assess impact fees. In the alternative, the town claims that, absent an explicit site plan regulation, it can assess impact fees pursuant to RSA 674:44 so long as there exists a rational nexus between the benefit conferred and the burden assessed.

In *Brickmaster*, we held that RSA 674:44 allows municipalities to authorize local planning boards to condition the approval of site plans on payment for off-site improvements. *Brickmaster*, 133 N.H. at 663–64, 582 A.2d at 606. We reasoned that "the legislature intended to give municipalities a tool for controlling their expenditures without jeopardizing the safety of the public, by allowing them to require those who would change the use of the land to make contributions towards the costs of any required increase in services." *Id.* at 663, 582 A.2d at 605. We then considered whether the Town of Salem had adopted specific site plan review regulations allowing the Salem planning board to require applicants to pay such fees. We found that it had, based on language in the regulations providing that the board was able to condition approval "in regard to achieving

'[m]aximum safety of traffic access and egress,' SALEM CODE § 268-8, A(1), and the '[i]nstallation of public improvements and amenities, at the expense of the applicant, . . . [including] improvements to existing roadway[s] . . . in order to adequately serve the proposed site.' *Id.* at § 268-8, A(6)." *Brickmaster,* 133 N.H. at 664, 582 A.2d at 606 (alterations in original).

The plaintiffs attempt to distinguish this case from *Brickmaster* on several grounds. They assert that while the Salem regulations expressly authorized the Salem board to impose conditions to achieve the installation of "public improvements . . . at the expense of the applicants," SALEM CODE § 268-8, A(6), the Hudson regulations do not contain similar express language. Although apparently conceding that the Hudson regulations authorize the board to require applicants to complete off-site improvements, they argue that the regulations are silent as to whether the board may impose impact fees or otherwise accept money in lieu of improvements. Applying rules of statutory construction, the plaintiffs conclude that because the regulations do not contain express authority, they do not authorize the board to assess impact fees.

The plaintiffs essentially confine their statutory analysis to section 275-12 (E) of the Hudson Code. This section, although cited in the town's brief as one source of authority to assess impact fees, is not the linchpin of the town's claim. Consequently, the plaintiffs' argument is too narrowly focused. Section 275-12 (E) provides:

> "As part of the approval of any application, the Planning Board may vote to require the posting of a bond or escrow agreement in such amount and in such form as may be determined and approved by the Planning Board as being reasonably necessary to ensure adherence and completion of all improvements required as conditions of approval of such plan . . . . The Planning Board may stipulate, as a condition precedent to the approval of the plat, the extent to which and the manner in which streets shall be graded and improved and to which water, sewer and other utility mains, piping, connections or other facilities shall be installed . . . . These regulations provide:
>
> . . . .
>
> (2) That, in lieu of the completion of street work and utility installations prior to the final approval of the plat, the Planning Board may accept a bond or other security in an amount and with surety and conditions satisfactory to it

providing for and securing to the municipality the actual construction and installation of such improvements and utilities within a period specified by the Planning Board and expressed in the bond or other security; and, further, that the Town of Hudson is granted the power to enforce such bonds or other securities by all appropriate legal and equitable remedies."

The plaintiffs argue that the language in this provision must be strictly construed, and, as such, the provision only authorizes the board to require an applicant to post a bond or escrow funds as a means to ensure that the improvements will be completed by the applicant.

We agree with the plaintiffs on this point; however, it does not avail their cause. We acknowledge that if the applicant is to complete required improvements, section 275-12 (E) limits the town's form of security to a bond or an escrow fund. Nevertheless, we do not read section 275-12 (E) to limit, or even address, the means by which the town *itself* may complete the required improvements. In other words, while this section may limit the form of security in the event the applicant is to complete the work, it does not foreclose the town from electing to complete improvements by contracting with a third party or by doing the work on its own and assessing the costs to the various developers. Indeed, upon reviewing the Hudson Code as a whole, *Petition of Jane Doe*, 132 N.H. 270, 276, 564 A.2d 433, 438 (1989), we conclude that the regulations accord the planning board authority to do just that.

Section 275-3 of the Hudson Code states that the purpose of the regulations is to "provide for and protect the public health, safety and general well-being." In order to further this purpose, section 275-6 states that the board may require applicants to provide for adequate, "[t]raffic circulation and access, including adequacy of entrances and exits, traffic flow, sight distance, curb cuts, turning lanes and traffic signalization," HUDSON CODE § 275-6 (B), and "[r]equire suitably located travelways of sufficient width to accommodate existing and prospective traffic . . . ." *Id.* § 275-6 (K). We can find no principled distinction between the language relied on in *Brickmaster* that authorized the Salem board to collect impact fees and the language in section 275-6 (B) and (K) of the Hudson regulations.

The plaintiffs' assertion that the Hudson Code does not explicitly provide that the improvements are "public" is inconsequential and their claim that the Code does not state that the improvements are

made at the owner's expense is unfounded. First, whether the regulations term a general class of off-site improvements "public improvements" is irrelevant. The real concern is not what label is employed, but rather whether the applicant is put on sufficient notice of the potential obligations that the board may require of applicants. Section 275-6, though not exhaustive, specifically lists potential improvements required of applicants, and, for purposes of notice, is at least as effective as the Salem regulations considered in *Brickmaster*. Furthermore, there can be no misunderstanding that the costs of completing the improvements are borne by the applicant. Section 275-6 explicitly states that "the owner" is responsible for securing "adequate provisions" in order to meet the enumerated general requirements of the code, including provisions (B) and (K) discussed above.

To the extent that the term "adequate provisions" may be considered ambiguous, interpreting it to mean that only the applicant may complete the work and that the town may not assess a proportioned contribution in lieu of work performed by the applicant is contrary to the statutory scheme. *See Appeal of Hoyt Rental & Leasing Co.*, 130 N.H. 130, 132, 536 A.2d 172, 173 (1987) (resolving ambiguity by adopting meaning that best harmonizes with term's context and apparent legislative policy). The plaintiffs' interpretation would limit the town either to mandate that each developer independently improve a section of the roadway or to require the various developers to complete the necessary work together. These options cannot, in our view, address the full extent of the problems contemplated by the regulatory provisions. Section 275-6 (K), for instance, addresses the stress on existing roadways from increases in "prospective traffic," which presumably takes its toll over a period of time. We can reasonably assume that the town, when drafting its regulations, intended to avoid the potential problems that a patchwork of road construction might generate as each developer works independently to satisfy his portion of roadway improvements. The difficulties of coordinating all the developers who might be required to contribute to improvements, assuming that they are still in business when the improvements are to be made, likewise suggests that the town intended the board to have additional avenues of conditional approval. That the town's regulations permit the board to require developers to pay a share of the cost of improvements, allowing the town to complete the work at a later date, is an interpretation more in line with the realities contemplated by the Hudson regulations.

The plaintiffs' interpretation of the various regulations implicitly concede that the improvements are made at the applicant's expense. To recognize that the board may require the applicant to post security pursuant to section 275-12 (E) in an instance where the applicant is required to complete the work necessarily assumes that the applicant is expected to complete the work at its expense. The plaintiffs' argument that the town may not impose a fee in lieu of work completed by the applicant also suggests that the plaintiffs understand that the work completed pursuant to section 275-6 (B) and (K) is at the applicant's expense. In sum, the Hudson regulations give sufficient notice to applicants that the board may condition site plan approval by requiring an applicant to contribute funds to the construction of off-site improvements.

We add that, in addition to the notice provided by the Hudson Code, once it is established that the regulations allow the board to condition site plan approval on off-site improvements, our decision in *Land/Vest Properties, Inc. v. Town of Plainfield*, 117 N.H. 817, 379 A.2d 200 (1977), gives notice that the board may require the applicant to contribute to the cost of such improvements. *Id.* at 823, 379 A.2d at 204. The board, of course, does not have unfettered discretion in this matter. Rather, we held in *Land/Vest* that "the subdivider can be compelled 'only to bear that portion of the cost which bears a rational nexus to the needs created by, and [special] benefits conferred upon, the subdivision.'" *Id.* at 823, 379 A.2d at 204 (quoting *Longridge Builders, Inc. v. Planning Bd. of Princeton Tp.*, 52 N.J. 348, 350, 245 A.2d 336, 337 (1968)). Thus, it remains only to remand to the superior court with instructions to remand to the board in order that the board may calculate the cost required of the plaintiffs based on the rational nexus test.

*Reversed and remanded.*

All concurred.