Belknap
No. 93-624

BOARD OF WATER COMMISSIONERS, LACONIA WATER WORKS

v.

MARK A. MOONEY

June 14, 1995

622

*Fitzgerald & Sessler,* of Laconia, and *Loughlin & Wade,* of Portsmouth (*James N. Sessler & a.* on the brief, and *Peter J. Loughlin* orally), for the plaintiff.

*Wescott, Millham & Dyer,* of Laconia (*Edward M. Gordon* on the brief and orally), for the defendant.

*McLane, Graf, Raulerson & Middleton, P.A.,* of Manchester (*Richard A. Samuels* and *Deborah F. Morazzi* on the brief), for the Manchester Water Works, as *amicus curiae*.

BROCK, C.J. The plaintiff Board of Water Commissioners, Laconia Water Works (board) appeals the equitable decree of the Superior Court (*McHugh,* J.) which ruled that a certain charge levied on new users of water provided by the board was an illegally imposed growth impact fee. We affirm in part, vacate in part, and remand.

In 1987, the defendant, Mark A. Mooney, contracted with the board to obtain water service for an anticipated housing development. In the initial and subsequent contracts between Mooney and the board, Mooney agreed to pay a "system development charge" (SDC) imposed by the board.

Prior to 1987, the board had been informed by the United States Environmental Protection Agency and the New Hampshire Water Supply and Pollution Control Commission that it would be required to improve its facilities in order to comply with federal and State requirements for safe drinking water. According to the board, it chose to build a treatment facility twice as large as was then necessary to serve its existing customers and comply with the safe drinking water standards in order to accommodate "new growth" in the number of system users. The superintendent of the water works, Rodger L. Matthewman, testified that the SDC was formulated because the board "had to come up with a way to finance that difference in the plan."

The board characterizes the SDC as "a one-time initial charge assessed when a new connection is made to the water system *or* when an existing connection is provided with a larger meter because an existing customer has substantially increased water usage." According to the board, "the objective of the [SDC] is to have only those persons demanding additional water pay the incremental cost to have that water supplied to them," and to "have amortized funds to pay for [those] capital improvements attributable to current and contemplated growth[ ]." In his answer to the board's petition for declaratory judgment, the defendant indicated that he had not refused

to bear that portion of the SDC which applies to the water treatment plant "under the 'rational nexus rule.'" *See, e.g., Lampert v. Town of Hudson,* 136 N.H. 196, 197, 612 A.2d 920, 920 (1992).

After paying the charge for several years as additional units were connected to the system, Mooney formally objected to the charge. The board petitioned for declaratory judgment in the superior court after concluding that Mooney's concerns raised issues of law beyond the scope of the board's authority. The court held that the SDC was an illegally enacted growth impact fee and ordered the board to refund all past monies paid by the defendant under the SDC. The court also awarded attorney's fees to the defendant.

On appeal, the board contends that the fee imposed on new users of its water service was a legally imposed system development charge that it had statutory authority to levy; that, even if the charges are deemed to be illegal growth impact fees, the defendant is not entitled to recover any of the charges collected thus far; and that the trial court's award of attorney's fees to the defendant was improper.

*I. Legality of the SDC*

RSA chapter 38 authorizes municipalities to obtain and control water works systems for the benefit of their citizens. RSA 38:3 (1988). Municipalities may then vest in a board of commissioners the "construction, management, control and direction" of the system, RSA 38:16 (1988), and the ability to "establish . . . regulations and . . . reasonable tolls" for the water they supply, RSA 38:15 (1988). In 1955, the City of Laconia (city) purchased the water works from two private companies. By enacting Laconia Ordinances, chapter 46, the city established the board pursuant to RSA 38:16.

"For the more convenient management" of such water systems, *id.*, a municipality may empower the board to "do all . . . things necessary for carrying into effect the purposes of [RSA chapter 38]." RSA 38:3; *see* RSA 38:16. The city vested the board with the authority to "establish a scale of prices, terms, or rates, upon which . . . water will be furnished to consumers, . . . [and to] charge such additional rates as in their judgment seems for the best interest of the department and the city." LACONIA ORDINANCES ch. 46, § 8. The city chose not to empower the board to purchase real estate, borrow money, or issue bonds for "any debt created in the construction and management of the water works." *See id.* §§ 6, 9.

█ In support of its contention that the SDC is a valid toll, the board asserts that it is essentially a "private business," and that municipal water commissions have "extraordinary powers." We disagree. Although the board may operate in a semi-independent manner, it remains nothing more than an arm of the municipality. RSA chapter 38, the

enabling legislation, is titled, *"Municipal* Lighting and Water Systems." (Emphasis added.) The board has never applied for or received status as a separate corporation and does not issue stock. The board is overseen by the Laconia City Council and must, by statute, file financial reports with the city at the time *"other* city . . . officers report." RSA 38:20 (1988) (emphasis added). These financial reports must be published in the annual report of the municipality. *Id*. Three of the five board members are appointed by the Laconia City Council; the remaining two members are the city manager and the director of public works of the city, who sit as *ex officio* members. LACONIA ORDINANCES ch. 46, § 1; *see* RSA 672:5 (1986). Vacancies on the board are filled by the city council. LACONIA ORDINANCES ch. 46, § 3. "So far as the transactions here involved are concerned, the board is the city." *Lucier v. Manchester,* 80 N.H. 361, 362, 117 A. 286, 287 (1922) (quotation omitted).

 Municipalities have only "powers [that] are *expressly granted* to them by the legislature and such as are *necessarily* implied or incidental thereto." *Girard v. Town of Allenstown,* 121 N.H. 268, 271, 428 A.2d 488, 489 (1981) (quotation omitted); *see also Dugas v. Town of Conway,* 125 N.H. 175, 181, 480 A.2d 71, 75 (1984). In turn, a municipality may not delegate to a municipal board more power than the municipality has. *See City of Concord v. Tompkins,* 124 N.H. 463, 469, 471 A.2d 1152, 1155 (1984). Accordingly, even though the city has empowered the board to charge reasonable rates for the services it provides and to charge "such additional rates as in their judgment seems for the best interest of the department and the city," LACONIA ORDINANCES ch. 46, § 8, we view the imposition of the SDC as though it were enacted by the city itself.

██ After reviewing our decision in *New England Brickmaster, Inc. v. Town of Salem,* 133 N.H. 655, 582 A.2d 601 (1990), the superior court found the SDC to be an illegally assessed growth impact fee. In *Brickmaster,* we construed the provisions of RSA chapter 674 governing the local land use planning and regulatory powers of municipalities and their local land use boards. *See id.* at 658–60, 582 A.2d at 602–04. We considered whether the express statutory authority granted to local land use boards to condition development approval on the provision of on- and off-site improvements included authority to condition development approval upon *payment* for off-site improvements. We did find such authority, so long as the condition bore a rational nexus to the development. *Id.* at 663–64, 582 A.2d at 606; *see also Blevens v. Manchester,* 103 N.H. 284, 286, 170 A.2d 121, 122–23 (1961) ("Since the subdivider of land creates the need for local improvements which are of special benefit to the subdivision, it is considered reasonable that he should bear the cost rather than the municipality and the general taxpayer.").

■ RSA chapter 38 contains no comprehensive authorization analogous to that found in RSA chapter 674. At least until 1991, the board was empowered by statute only to charge "reasonable tolls" for supplying its customers with water service. RSA 38:15 (1988). "Tolls" are not defined in the chapter. We give a statutory term that is not defined its plain and ordinary meaning. *Barksdale v. Town of Epsom,* 136 N.H. 511, 514, 618 A.2d 814, 816 (1992). The plain and ordinary meaning of "toll" when used regarding the provision of water service is "a compensation taken for services rendered." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2405 (unabridged ed. 1961). A fee imposed to offset the cost of improvements designed to meet the needs occasioned by present and future growth does not fit within this definition. "[S]ince the power of a [municipal] agency is derived from the state enabling act, a condition [such as payment of the SDC] may be imposed only if it is authorized by statute. . . . [A]bsent a legislative grant, an attempt to exercise such authority is ultra vires and void." 83 AM. JUR. 2d *Zoning and Planning* § 562, at 450 (1992) (footnotes omitted). We hold that the board lacked authority to impose the SDC upon new users of the water system.

■ In 1991, the legislature amended RSA chapter 674 to authorize localities to impose impact fees. Laws 1991, 283:1-3; RSA 674:21, I(m) (Supp. 1994). This authorization includes fees that would finance "construction or improvement of capital facilities owned or operated by the municipality, including . . . water treatment and distribution facilities." RSA 674:21, V (Supp. 1994). This section would authorize the imposition of a new SDC, as long as the municipality or planning board or, as applicable, board of water commissioners followed the procedural requirements included in the provision. *See* RSA 674:21, V(a)–(i); *cf. Mooney v. City of Laconia,* 133 N.H. 30, 35, 573 A.2d 447, 450 (1990). One of these requirements is that an impact fee imposed pursuant to the section must "be assessed prior to, or as a condition for, the issuance of a building permit or other appropriate permission to proceed with development." RSA 674:21, V(d). In addition, the entire provision contemplates that these sorts of fees be imposed by municipal ordinance, rather than simple incorporation into a fee schedule. *See* RSA 674:21, V (introductory paragraph stating that "all impact fee ordinances" are subject to enumerated procedural requirements). The SDC in the instant case was imposed as a "statement of policy" by incorporation into the board's fee tariff, and was imposed as a condition to connect to the board's water supply. Accordingly, even though the city, and by extension the board, had authority to impose the SDC as of 1991, the procedural requirements of RSA chapter 674 were not met. The

charge therefore continued to be invalid even when the board possessed statutory authority to impose it.

We note that the legislature recently enacted RSA 38:15-b (Supp. 1994) (effective July 8, 1994), which authorizes boards such as this one to assess against customers "their just share" of the cost of any construction or maintenance of the system. Although this provision may address charges such as the SDC, it became effective approximately one year after the superior court decision in this case. We do not decide today whether the SDC is valid under amended RSA chapter 38.

## II. Refund of Past SDC's Paid

After finding the SDC to be an illegally enacted impact fee, the superior court ordered the board to refund all SDC's paid by the defendant within a reasonable period of time. "The propriety of affording equitable relief in a particular case rests in the sound discretion of the trial court to be exercised according to the circumstances and exigencies of the case." *Crocker v. Canaan College,* 110 N.H. 384, 388, 268 A.2d 844, 847 (1970).

 On appeal, the board contends that, even if we find the SDC to be an invalid impact fee, the defendant is not entitled to the full amount of all SDC's paid to date. The board urges this court to apply the doctrine of laches to preclude reimbursement. Whether a party is precluded by laches from enforcing an equitable right is a question of fact properly resolved by the trial judge. *Jenot v. White Mt. Acceptance Corp.,* 124 N.H. 701, 709–10, 474 A.2d 1382, 1387 (1984).

 In this case, it is not the defendant but the plaintiff who has made the claim of laches. This awkward procedural position does not preclude application of the doctrine, however. The board brought this action for declaratory judgment, stating in its petition that "the [d]efendant now questions the reasonableness and legality of the [entire] tariff, specifically the [SDC], and has advised the [board] that he will challenge the same if he is required to make continued payments." "The well established rule in equity is, that if a party is guilty of laches or unreasonable delay in the enforcement of his rights, he thereby forfeits his claim to equitable relief." *O'Grady v. Deery,* 94 N.H. 5, 8, 45 A.2d 295, 297 (1946) (quotation and ellipses omitted). Laches "is principally a question of the inequity of permitting the claim to be enforced." *Jenot,* 124 N.H. at 710, 474 A.2d at 1387 (quotation omitted).

In determining whether to apply laches, courts in this jurisdiction will turn to the analogous statute of limitations for guidance. However, neither law nor equity nor science

has been able to develop any mechanical gauge that will automatically tell litigants or the court the number of months or years that are required to constitute reasonable promptness in bringing suit to avoid the defense of laches.

. . . .

When the delay in bringing suit is less than the applicable limitation period, laches will constitute a bar to suit only if the delay was unreasonable and prejudicial. The party asserting laches bears the burden of proving both that the delay was unreasonable and that prejudice resulted from the delay.

*Id.* (quotation and citations omitted).

Despite the broad discretion granted to trial courts in equitable matters, *see Crocker,* 110 N.H. at 388, 268 A.2d at 847, we have reviewed their decisions to determine whether a party claiming an inequitable delay produced sufficient evidence to support a finding of laches. *See Jenot,* 124 N.H. at 711, 474 A.2d at 1388. The superior court made no express findings regarding whether or not the doctrine of laches should apply, although each of the parties made numerous requests for findings of fact and rulings of law. *See* RSA 491:15 (1983). We vacate the superior court's order to refund all SDC's paid and remand the matter for a review of the circumstances supporting the board's claim of laches and for a determination whether or to what extent the doctrine should apply to the instant case.

*III. Attorney's Fees*

The superior court awarded attorney's fees to the defendant because he "conferred a substantial benefit on the citizens and taxpayers of Laconia by bearing the burden of defending this suit against this invalid fee."

■ New Hampshire adheres to the American Rule on the question of attorney's fees: parties pay for their own attorneys' costs, subject to certain statutorily and judicially created exceptions. *E.g., Irwin Marine, Inc. v. Blizzard, Inc.,* 126 N.H. 271, 276, 490 A.2d 786, 790–91 (1985); *Silva v. Botsch,* 121 N.H. 1041, 1043, 437 A.2d 313, 314 (1981). "These exceptions are flexible, not absolute, and have been extended on occasion." *Silva,* 121 N.H. at 1043, 437 A.2d at 314 (quotation omitted). We give "tremendous deference" to a superior court decision on attorney's fees, *Adams v. Bradshaw,* 135 N.H. 7, 16, 599 A.2d 481, 487 (1991), *cert. denied,* 112 S. Ct. 1560 (1992), because "[w]hen overriding considerations so indicate, the award of fees lies within the power of the court, and is an appropriate tool in the court's

arsenal to do justice and vindicate rights." *Silva,* 121 N.H. at 1043, 437 A.2d at 315 (quotation omitted).

In *Silva* and *Irwin Marine,* we concluded that a prevailing party was entitled to attorney's fees if that party had conferred a "substantial benefit" upon the community at large. *Irwin Marine,* 126 N.H. at 276–77, 490 A.2d at 791 (prevailing party entitled to attorney's fees after it succeeded in setting aside a sale of municipal property that was based on an unfair public bidding procedure); *Silva,* 121 N.H. at 1043–44, 437 A.2d at 314 (prevailing party entitled to attorney's fees after he "expended his own funds to retain his position on the planning board, to which he was statutorily entitled . . . [thereby] vindicat[ing] the legislature's express command"); *see also Town of Littleton v. Taylor,* 138 N.H. 419, 424–25, 640 A.2d 780, 783–84 (1994).

In the instant case, after determining that the defendant's challenge to the SDC was meritorious, the superior court concluded that he had conferred a substantial benefit on the citizens and taxpayers of Laconia by successfully defending this action. This ruling falls within the broad discretion afforded the superior court in decisions regarding attorney's fees, *see Adams,* 135 N.H. at 16, 599 A.2d at 487, and we see no reason to disturb it. We therefore affirm the superior court's decision to award attorney's fees in this action to the defendant.

*Affirmed in part; vacated in part; remanded.*

All concurred.