Grafton
No. 7146

L. Earle Garipay & a.

v.

Town of Hanover & a.

January 31, 1976

*Baker & Page (Mr. Ridler W. Page* orally) for the plaintiffs.

*Laurence F. Gardner,* by brief and orally, for the defendants.

Griffith, J. This is an appeal under RSA 36:34 (Supp. 1975) from a decision of the Planning Board of the town of Hanover denying plaintiffs' agents' request for preliminary approval of a subdivision in that town. The issues were submitted to the trial court on an agreed statement of facts and transferred without ruling by *Johnson,* J. The planning board's denial of the request for

approval of the subdivision was based on a finding that Hemlock Road, the access road connecting the proposed subdivision to the main network of town roads, would be inadequate to handle the increased traffic created by forty-nine new homes. The question presented to us is whether the planning board is authorized under RSA ch. 36 and the town ordinances to reject a subdivision proposal which intrinsically conforms to requirements of the town zoning ordinance and regulations solely because of the inadequacy of an offsite, town-owned road.

The dangers posed by the inadequacy of Hemlock Road to accommodate increased traffic demands are discussed at length in the minutes of the planning board meetings of December 18, 1973, January 8, 1974, and January 15, 1975. The location of the proposed subdivision is on top of a hill to which Hemlock Road provides the only access. This road is described as "narrow, steep and winding, having a width of fourteen to sixteen feet, shoulders only two feet wide, a grade which at times exceeds 15%, and a course which results in "at least one horseshoe curve." Consequently, the planning board found that the road would pose "a serious danger to both pedestrian and vehicular traffic." The town police chief expressed "serious reservations about [his] department being able to respond to an emergency in this area, in the wintertime." There was evidence that in winter the steepness of the road often forces residents to leave their cars at the foot of the hill, and that while the limited available space can accommodate the present vehicles, congestion created by further abandoned cars from the subdivision could cause serious hazards.

The plaintiffs do not contest the accuracy of these findings. Their argument is that the planning board is precluded from considering offsite factors and must limit its investigation to whether the subdivision internally complies with state and town requirements. In our opinion both the state-enabling legislation and the Hanover subdivision regulations provide authority for the board's decision.

RSA 36:21 (Supp. 1975) provides that town planning boards may promulgate regulations which "provide against such scattered or premature subdivision of land as would involve danger or injury to health, safety, or prosperity by reason of the lack of . . . transportation . . . or other public services, or necessitate an excessive expenditure of public funds for the supply of such services." Pursuant to this statute, Hanover has enacted article III (B) of its subdivision regulations, which uses language identical to that

quoted above. These provisions plainly empower the planning board to take offsite factors into its consideration, insofar as they render subdivisions "scattered or premature."

The plaintiffs argue that the proposed subdivision cannot be deemed "scattered or premature" because there are already some eighteen homes in the area. Plaintiffs further maintain that such a finding is precluded by language on a map contained in the Hanover master plan, which designates the site "to be developed after 1970" According to this argument once an area is found not to be premature for a particular degree of development, it must be found ripe for all levels of development. In other words, where there are presently some homes in the area, the planning board may not find that an addition of forty-nine homes would be premature, regardless of the amount of public services available.

We reject this interpretation as too narrow, for prematurity is a relative rather than an absolute concept. The statute, by defining a "scattered or premature" development as one which poses a danger to the public through insufficiency of services, sets up a guide for the planning board's determination. The board must ascertain what amount of development, in relation to what quantum of services available, will present the hazard described in the statute and regulations. At the point where such a hazard is created, further development becomes premature. Thus in the instant case, although the available services suffice to meet the need of the present eighteen homes, when an additional forty-nine homes will endanger the well-being of residents both within and contiguous to the development, the statute and regulations authorize the planning board to find the subdivision premature. Thus the action of the Hanover Planning Board was within its statutory mandate.

Case law in other jurisdictions recognizes that absent specific statutory authority a planning board is authorized to reject a proposed subdivision because of an inadequate offsite access road under a general statutory mandate such as that found in RSA 36:21 (Supp. 1975): "[Planning board regulations] generally may include provisions which will tend to create conditions favorable to health, safety, convenience, or prosperity." *In re Pearson Kent Corp. v. Bear,* 28 N.Y.2d 396, 271 N.E.2d 218 (1971); *Forest Constr. Co. v. Planning & Zoning Comm'n,* 155 Conn. 669, 236 A.2d 917 (1967); *see Isabelle v. Newbury,* 114 N.H. 399, 402, 321 A.2d 570, 572 (1974). "Subdivision controls are imposed on the supportable premise that a new subdivision is not an island, but an integral part of the whole

community which must mesh efficiently with the municipal pattern of streets, sewers, water lines and other installations which provide essential services and vehicular access . . . . [O]ffsite circumstances may be considered by the reviewing board, and may provide the basis for denying approval of a plat." 3 R. Anderson, American Law of Zoning § 19.36 (1968).

*Appeal dismissed.*

GRIMES, J., did not sit; the others concurred.