Cheshire
No. 90-274

MARY W. ZUKIS

v.

TOWN OF FITZWILLIAM & a.

March 20, 1992

*Tower, Bean & Crocker P.A.*, of Jaffrey (*David M. Tower* on the brief and orally), for the plaintiff.

*Goodnow, Arwe, Ayer and Prigge P.C.*, of Keene (*Joseph S. Hoppock* on the brief and orally), for the defendants.

*H. Bernard Waugh, Jr.*, of Concord, by brief for New Hampshire Municipal Association, as *amicus curiae*.

BATCHELDER, J. The defendants, the Town of Fitzwilliam and the Fitzwilliam Planning Board (the Town), appeal the decision of the Superior Court (*Groff*, J.) reversing the Town's denial of the plaintiff's request for subdivision approval on the basis that the proposed subdivision was premature. The Town raises three issues on appeal. First, it argues that the trial court erred in ruling that the proposed subdivision was not premature, because it relied on the fact that the poor condition of the access roads and the related safety problems were created long before the plaintiff applied for subdivision approval. Second, the Town maintains that the trial court's reliance on the Town's lack of a capital improvements program (CIP), which is a growth management tool, was error, because the subdivision denial was based on the violation of subdivision regulations, which are different from growth control regulations. Finally, the Town contends that the trial court erred in ruling that approval of the subdivision would not require an excessive expenditure of town funds. For the reasons that follow, we reverse and remand.

The facts are not in dispute. The plaintiff owns a forty-two-acre tract of land on the east side of Templeton Turnpike in Fitzwilliam.

Primary access to the plaintiff's proposed subdivision is by Howeville Road to Sandy Hollow Road to Templeton Turnpike. Templeton Turnpike is a narrow, gravel road which is often impassable during the "mud season." The land adjoining and in the immediate vicinity of the plaintiff's proposed subdivision has been previously subdivided and developed, with more than twenty-five year-round residential dwellings located within one mile of the property.

On December 16, 1986, the plaintiff submitted an eight-lot subdivision proposal to the Fitzwilliam Planning Board but did not pursue it until August 1988. On October 5, 1988, the Fitzwilliam Board of Selectmen sent a letter to the planning board, urging it not to approve "mid- or large-size subdivisions" until the Town's CIP had been completed. By letter to the planning board, dated December 6, 1988, the plaintiff, in an apparent measure of good faith in an effort to expedite the project, offered to contribute $16,000 toward the upgrading of Templeton Turnpike and offered to phase the development to accommodate the construction of only two houses each year for four years. Notwithstanding the plaintiff's offer, on December 20, 1988, the planning board unanimously voted to deny the plaintiff's subdivision application on prematurity grounds, citing the inadequacy of the roads and "an excessive expenditure to the Town" for the required road improvement.

The plaintiff appealed the planning board's denial of her subdivision application to the superior court pursuant to RSA 677:15, arguing that the planning board's decision was illegal and unreasonable. The trial court reversed the decision of the planning board, in effect ruling that although the planning board has authority, in the absence of a capital improvements program, to deny subdivision approval on the basis of prematurity under provisions adopted pursuant to RSA 674:36, such authority is limited to those cases where compliance with prematurity criteria would require an "excessive expenditure of public funds" as determined under all the circumstances. The court determined that the subdivision in question did not require an excessive expenditure, reasoning that the expenditure was required by existing conditions, rather than conditions that would come into being as a result of the development. Thus, the question for us to decide comes down to this: may a planning board deny a subdivision application if it determines that the condition of access roads is so poor or inadequate that the safety of the present residents will be jeopardized further by the subdivision for which approval is sought? Such a question involves consideration of planning board powers with respect to prematurity as set forth in RSA 674:36 and the subdivision

regulations in effect in the town ordinance at the time of the application in this case.

█ On appeal we will "'uphold the trial court unless its decision is not supported by the evidence or is legally erroneous.'" *K & P, Inc. v. Town of Plaistow*, 133 N.H. 283, 289, 575 A.2d 804, 808 (1990) (quoting *Nadeau v. Town of Durham*, 129 N.H. 663, 666, 531 A.2d 335, 337 (1987)). Hence, our inquiry is not "whether we would find as the trial court did, but whether the evidence reasonably supports the finding." *Durant v. Town of Dunbarton*, 121 N.H. 352, 357, 430 A.2d 140, 144 (1981).

As a preliminary matter we note that the trial court apparently found the absence of a CIP relevant to its determination that the planning board's denial of the proposed subdivision was unreasonable. The Town asserts that the goal underlying a CIP, namely the effectuation of a master plan, *see* RSA 674:6, is quite different from the goal underlying a Town's subdivision regulations, which is protection from danger or injury to public health and welfare, *see* RSA 674:36, II(a).

█ A capital improvements program, as RSA 674:5 provides, is a management tool for budget purposes: nothing more, nothing less. "The sole purpose and effect of the capital improvements program shall be to aid the mayor and the budget committee in their consideration of the annual budget." *Id.* Other than its management tool capabilities, a CIP has no part to play in the review of subdivision applications presented to governmental authorities.

The trial court, we believe, mistakenly relied on *Rancourt v. Town of Barnstead*, 129 N.H. 45, 523 A.2d 55 (1986). *Rancourt* involved growth restrictions based on the Town's master plan, a procedure which we held to be invalid because it allowed the planning board to apply growth control restrictions on an *ad hoc* basis, without requiring the local legislative body to approve the plan. *Id.* at 48–49, 523 A.2d at 58; *see* RSA 674:4. In this case, however, the Town did not cite growth control or its master plan as a reason for denying the proposal. It rejected the plan solely on the basis of its subdivision regulations promulgated under RSA 674:36. Any denial of subdivision approval will naturally have the secondary effect of limiting growth. However, subdivision regulations and growth control regulations have entirely different origins and purposes. *Compare* RSA 674:2, :6 *and* :22 *with* RSA 674:36 (1986 and Supp. 1990).

Turning to the principal issue on appeal before us, namely prematurity, we note that the Fitzwilliam subdivision regulations provide as follows:

"Section VI GENERAL REQUIREMENTS FOR THE SUBDIVISION OF LAND

. . .

C. Scattered or Premature Development

. . .

2. Causes: The following items shall be considered in determining whether the proposed subdivision is scattered or premature. The subdivider may be required to have studies made under guidelines established by the Planning Board to determine the effect that the proposed subdivision may have:

a. Distance from nearest elementary school.

b. Capacity of school system and effect on school bus transportation.

c. Adequacy of access street(s) and/or sidewalk(s).

d. Adequacy of water supply for domestic and fire fighting purposes . . . .

e. Potential health problems due to on-site sewage systems and inadequate water supply.

f. Potential fire protection problems due to location and/or special conditions relative to type of use.

g. Potential special policing problems.

h. Potential drainage problems both on the site and downstream.

i. Necessitating excessive expenditure of public funds.

j. Other potential problems within the meaning of the purpose of this section as stated in No. 1."

■ The Town argues that a planning board may properly consider the present condition of access roads when ruling on a subdivision application, and if a hazard is created by the present level of development, it may find that future development is premature. It contends, therefore, that the trial court erred in ruling to the contrary. We agree.

In *Garipay v. Town of Hanover,* 116 N.H. 34, 351 A.2d 64 (1976), this court was presented with the question of whether a planning board was authorized to reject a subdivision proposal, which conformed to the requirements of the town zoning ordinance, solely because of the inadequacy of an off-site, town-maintained road. *Id.* at

35, 351 A.2d at 64. In that case, the plaintiff argued that the planning board could not validly deny approval on prematurity grounds because there were already homes in the area, and once prior development had occurred, the area must be found ripe for any future development. *Id.* at 36, 351 A.2d at 65. This court rejected the plaintiff's argument as "too narrow, for prematurity is a relative rather than an absolute concept." *Id.* The opinion continued: "The board must ascertain what amount of development, in relation to what quantum of services available, will present the hazard described in the statute and regulations. *At the point where such a hazard is created,* further development becomes premature." *Id.* (emphasis added). In this case, the parties agree, and the trial court ruled, that "Sandy Hollow Road and Templeton Turnpike are inadequate roads and they create serious safety problems as the area now exists." Consequently, "the point where such a hazard is created" has already been surpassed. Although the hazard existed before the plaintiff's subdivision proposal was submitted, "[a] planning board must consider current as well as anticipated realities" when ruling on a request for subdivision approval. *Patenaude v. Town of Meredith,* 118 N.H. 616, 621, 392 A.2d 582, 585 (1978).

█ In addition, we disagree with the trial court's characterization that the proposed subdivision would not "create a safety hazard . . . of any significantly greater degree than already exists." Exposing more households to the risk that emergency vehicles would be unable to respond when their services were required does magnify the existing hazard. Thus, it was error for the trial court to rule that the pre-existing inadequacy of the access roads was not a valid basis for the planning board's finding of prematurity.

█ Finally, the trial court's ruling that the proposed subdivision would not require an excessive expenditure of public funds was based on its conclusion that the expenditure to improve the roads was "required by the existing condition[,] not by the proposed development." We have already held that the court erred in relying on the existing inadequacy of the roads for its ruling that the subdivision was not premature. This error also infected the trial court's ruling with respect to the issue of excessive expenditure. We vacate the order below and remand to the trial court for reconsideration consistent with this decision.

*Reversed and remanded.*

All concurred.