# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0238, <u>Appeal of Town of Roxbury</u>, the court on November 14, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The Town of Roxbury (Town) appeals an order of the Housing Appeals Board (HAB) reversing the Town's Planning Board's (Board) denial of a subdivision application submitted by Greatwoods Unity Forests, LLC (Greatwoods). On appeal, the Town argues that the HAB erred by: (1) substituting its judgment for that of the Board; (2) determining that the Board did not properly address the test for scattered or premature development; and (3) concluding that the Board's decision to deny the subdivision application was based on a concern about future development. We reverse.

I

The following facts are supported by the record. In April 2021, Greatwoods submitted an application to the Board seeking approval for a three-lot subdivision with frontage on Middletown Road in Roxbury. Greatwoods proposed to subdivide its current 159.3 acre lot into one lot of 6.5 acres and one lot of 5.18 acres, leaving "a large remainder lot of 147.6+/- acres." Although "[n]o dwellings [were] specifically proposed in conjunction with the subdivision," Greatwoods indicated in its application that "the lots are intended for residential use."

In July 2021, the Board held a public hearing on Greatwoods' application. Scott Sanborn, property surveyor and Road Agent for the Town of Orange, reported on behalf of Greatwoods that the proposed subdivision met "all zoning requirements." He stated that, "with reference to the total acreage of the existing single property, zoning regulations in Roxbury could allow for up to 31 lots," but "the subdivision proposal before the Board would result in only three lots, the two smaller of which [were] targeted for home development."

Regarding the proposal's potential impact, an abutter expressed concern about additional development because Middletown Road "is difficult to negotiate particularly in mud season." Board Chair Kline emphasized the problems that added traffic on Middletown Road would pose. He pointed out that "the applicable zoning allows for two-family residences," and calculated that if two-family residences were built on each of the proposed lots, that would

amount to six additional households. He noted that "the road becomes virtually impassable during mud season, requiring residents to very often pull out and tow stuck cars." Sanborn observed that "if Middletown Road is already considered to be substandard, the Town should address that matter on its own initiative." In addition, the Fire Chief testified about the lack of access to certain fire protection measures on Middletown Road.

At its subsequent meeting in August 2021, Kline explained that "the town's attention, effort and expense [were] barely able to maintain Middletown and other town roads in useable conditions, and at times even those efforts and expenses [could not] keep the roads safe." He posited that "the condition of Middletown Road already pose[d] a hazard to current residents whose properties front on the road," and that "in his view the effect of added traffic on the road from" potentially six new households "on the welfare of current residents is 'a hurdle that can't be cleared.'" Accordingly, "due to the inadequacy of Middletown Road," the Board voted to deny Greatwoods' subdivision application "on property fronting Middletown Road."

In its Memorandum of Decision, the Board found that "hazardous conditions" exist on Middletown Road. Those hazardous conditions include that the road: (1) "is comprised of sand and gravel that regularly washes out despite diligent efforts to prevent" that from happening; (2) "has grades exceeding 15%"; (3) "dead ends at the top of a long hill" and there "is no passable outlet"; (4) "narrows to less than 20 feet in width along multiple sections"; (5) "has no less than six blind curves"; (6) "has multiple culvert crossings critical to the road's structural integrity and increasingly requiring replacement and repair"; (7) has no sidewalks or guardrails; and (8) has sections that "are so narrow and curved as to endanger vehicular traffic and at times have required cars traveling in opposite directions to drive off road."

In addition, the Board found that "Winter and mud season render portions of the road impassable," and that "[r]esidents testified to vehicles going off the road and vehicles sinking in the mud every Winter and Spring." The Board also emphasized the Fire Chief's testimony, including that: (1) "the latter two-thirds of the road (approximately two miles) has no water service and the nearest hydrant to the subject subdivision is two miles away, at the bottom of the mostly sand and gravel road that is at times impassable"; (2) "Roxbury heavily relies on the mutual aid of nearby municipalities and that response times are slowed by distance"; and (3) "water tankers are the primary means of fighting fires at this end of Middletown Road, that the road is an impediment to the tankers even in the best conditions, and that during Winter and mud season the road is hazardous for them."

Emphasizing the poor condition of Middletown Road — a road that was "established centuries ago" — and the lack of access to fire protection, the Board determined that "Middletown Road is at its capacity to safely support the

present density of residences." The Board relied on <u>Zukis v. Town of Fitzwilliam</u> and <u>Garipay v. Town of Hanover</u>, which recognize that the pre-existing inadequacy of access roads is a valid basis for a planning board's finding of prematurity. <u>See Zukis v. Town of Fitzwilliam</u>, 135 N.H. 384, 389 (1992); <u>Garipay v. Town of Hanover</u>, 116 N.H. 34, 36 (1976); <u>see also</u> RSA 674:36, II(a) (2016). Therefore, the Board determined that "[t]he subdivision would increase danger to public health and safety, life and property, and is therefore denied."

In September 2021, Greatwoods appealed the Board's decision to the HAB, arguing that the decision should be reversed because (1) the decision was unreasonable, illegal, and not based on facts in the record and (2) the Board exceeded its authority and engaged in <u>ad hoc</u> growth control. On November 30, 2021, the HAB conducted a "Property View," "which included walking the entire frontage of the area where the new lots would be created, as well as driving the full length of Middletown Road and back." The HAB held a hearing on the appeal in December 2021 at which counsel for the Town and Greatwoods presented argument. Counsel for the Town pointed out that three of the four voting members on the Board live on Middletown Road. He explained that the Board relied, in part, on its members' "firsthand, personal knowledge" of Middletown Road, which he distinguished from mere personal opinion. He further emphasized that the Fire Chief provided expert testimony before the Board.

In February 2022, the HAB found, "on a balance of the probabilities," that the Board's denial of the application was "unreasonable." Based on its observations from its view, the HAB disagreed with the Board's assessment of the condition of Middletown Road. For instance, the HAB noted that "new drainage structures had been installed along sections of the Road, that the Road was of sufficient width to allow safe approaching vehicular passage, and that the surface was in good condition even though a portion of the Road was unpaved." The HAB also observed that "[t]he crowns of the road allow for reasonable drainage in order to prevent excessive pooling of water." The HAB rejected the Board's finding that the road contains six blind curves, asserting that "[t]he unanimous view" of the HAB was that "there are no 'hairpins,' and all curves can be safely driven at the Town's posted speed limit."

In addition, the HAB determined that the Board failed to identify, in relation to the proposed three-lot subdivision, the point at which a present hazard existed and further development became premature. <u>See Garipay</u>, 116 N.H. at 36. The HAB also noted that "[w]hile the Planning Board was not bound by Mr. Sanborn's opinion, it was given little-or-no weight by the Planning Board, which relied upon its own conclusions regarding the condition of Middletown Road." Moreover, the HAB stated, "[t]he focus of the 'fire protection' issue was the Fire Chief's concerns about mud-season access," yet "[t]here was no report submitted to the Board of any emergencies on

3

Middletown Road which have not been met by the Fire Department, and no methods were suggested to mitigate this concern, such as installation of a cistern or individual sprinkler systems." Thus, the HAB reversed the Board's denial of the subdivision application.

The Town moved for reconsideration, to which Greatwoods objected. The HAB denied the Town's motion. This appeal followed.

## II

On appeal, the Town argues that the HAB erred by: (1) substituting its judgment for that of the Board; (2) determining that the Board did not properly address the test for scattered or premature development; and (3) concluding that the Board's decision to deny the subdivision application was based on a concern about future development. Greatwoods contends that the Board's decision "refers to no evidence to support denial" of the application and that the proposed subdivision is not scattered or premature development. (Capitalization, bolding, and underlining omitted.)

The HAB's review of a planning board's decision is governed by statute. When reviewing a planning board's decision, the HAB "shall not reverse or modify a decision except for errors of law or if the board is persuaded by the balance of probabilities, on the evidence before it, that said decision is unreasonable." RSA 679:9, II (Supp. 2022). "Appeals shall be on the certified record, and except in such cases as justice may warrant, in the sole discretion of the board, no additional evidence will be introduced." RSA 679:9, I (Supp. 2022). "[T]he burden of proof shall be upon the party seeking to set aside any order or decision of" the planning board "to show that the order or decision is unlawful or unreasonable." RSA 677:6 (2016); see RSA 679:9, I ("Appeals to the [HAB] shall be consistent with appeals to the superior court pursuant to RSA 677:4 through RSA 677:16."). "All findings of" the planning board "upon all questions of fact properly before the [HAB] shall be prima facie lawful and reasonable." RSA 677:6; see RSA 679:9, I.

Our review of the HAB's decision is governed by RSA chapter 541. See RSA 679:15 (Supp. 2022) ("Decisions of the [HAB] may be appealed to the supreme court by any party in accordance with the provisions of RSA 541 as from time to time amended."). The HAB's decision "shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13 (2021).

## III

We first address the Town's argument that "the HAB applied the wrong standard of review because it substituted its own judgment instead of

determining whether the Planning Board's record supported the Planning Board's decision." Greatwoods contends that the Board "refer[red] to no evidence to support [its] denial" of the subdivision application and that "[s]ince the HAB's independent observations during the view were consistent with Sanborn's observations, testimony and the documentation he submitted to the Planning Board, the court must affirm the HAB Order." (Capitalization and bolding omitted.) We agree with the Town.

The scope of the HAB's review of a planning board's decision is not to determine whether it agrees with the board's findings, but, rather, is limited to whether there is evidence in the record upon which the planning board could have reasonably based its findings. Appeal of Chichester Commons, 175 N.H. 412, 415-16 (2022). The HAB found, "on a balance of the probabilities, that denial of the Applicant's subdivision was unreasonable." However, to reach this conclusion the HAB did not treat the Board's factual findings — particularly those regarding poor road conditions and the lack of accessible fire protection measures during winter and mud season — as prima facie lawful and reasonable. See RSA 677:6; RSA 679:9, I. Instead, the HAB relied on its own observations from its view to reject the Board's findings overall, including findings for which there was no contradictory evidence in the record. Indeed, at oral argument, counsel for Greatwoods did not disagree that the HAB members substituted their own judgment for that of the Board, but represented that they may be justified in doing so because they have specialized expertise. This justification, however, does not reflect the HAB's standard of review. See RSA 677:6; RSA 679:9, I.

The HAB further substituted its judgment for that of the Board by discrediting the personal knowledge of the Board members. The HAB reasoned that although "[a]ll members of the Planning Board are free to provide their own opinions," they gave "little-or-no weight" to Sanborn's opinion and instead the Board "relied upon its own conclusions regarding the condition of Middletown Road." A planning board's decision must be based upon more than "vague concerns" or the "mere personal" opinion of its members. Ltd. Editions Properties v. Town of Hebron, 162 N.H. 488, 497 (2011). Yet, we have previously determined that "[i]n arriving at a decision, the members of the [planning board] can consider their own knowledge concerning such factors as traffic conditions, surrounding uses, etc., resulting from their familiarity with the area involved." Nestor v. Town of Meredith, 138 N.H. 632, 636 (1994) (quotation and brackets omitted). Here, the record supports that the Board did not base its decision on mere personal opinion. Rather, the Board members — three of whom live on Middletown Road — relied on their personal knowledge and observations of the road, in addition to the testimony of residents and the Fire Chief. Accordingly, under these circumstances, where the Board's decision was supported by evidence in the record, the HAB erred in making its own factual findings and rejecting those made by the Board.

5

Nonetheless, Greatwoods contends that the HAB did not err because "there was no basis [for the Board] to deny the Application as premature [or] scattered." However, we agree with the Town that the HAB erred in concluding that the Board (1) did not properly address the test for scattered or premature development and (2) based its decision on a concern about future development.

RSA 674:36, II(a) allows a planning board to adopt subdivision regulations that "[p]rovide against such scattered or premature subdivision of land as would involve danger or injury to health, safety, or prosperity by reason of the lack of water supply, drainage, transportation, schools, fire protection, or other public services, or necessitate the excessive expenditure of public funds for the supply of such services." Roxbury's subdivision regulations include a provision incorporating similar language. See Town of Roxbury Subdivision Regulations § 4.03.

The statute, by defining a "scattered or premature" development as one which poses a danger to the public through insufficiency of services, sets up a guide for the planning board's determination. Garipay, 116 N.H. at 36. The planning board must ascertain what amount of development, in relation to what quantum of services available, will present the hazard described in the statute and regulations. Id. At the point where such a hazard is created, further development becomes premature. Id. The focus of the inquiry is upon the effect of the proposed development on the community, not the effect of further development in general on the community. Ettlingen Homes v. Town of Derry, 141 N.H. 296, 298 (1996). The planning board must consider current as well as anticipated realities when evaluating the maturity of a particular subdivision request. Id.

The HAB found that the Board "never accurately addressed" the prematurity test with respect to the three-lot subdivision, explaining that it was "unclear what the Planning Board ultimately considered in finding how much additional development would 'constitute a hazard.'" Although the Board's decision indicates that the Board was also concerned about the possibility of future development, the Board specifically concluded:

> The proposed subdivision of approximately 160 acres into three lots of 6.5 acres, 5.18 acres and 147.6 acres is accessed by a narrow sand and gravel dead-end Class V road with steep grades, blind curves, no guardrails and no sidewalks. There is no municipal water supply for fighting fires and the nearest fire hydrant is two miles away, down hill. The subdivision would increase danger to public health and safety, life and property, and is therefore denied.

Thus, the Board's reasoning was narrowly focused on the proposed three-lot subdivision and the "hazardous conditions" that currently exist on Middletown Road. See Zukis, 135 N.H. at 389 (reasoning that "[e]xposing more households

6

to the risk that emergency vehicles would be unable to respond when their services were required <u>does</u> magnify the existing hazard" (emphasis added)). Likewise, due to concerns regarding lack of fire protection and poor road conditions, the Board found that "Middletown Road is at its capacity to safely support the <u>present density of residences</u>." (Emphasis added.) This reasoning is similar to that in <u>Garipay</u>, where we concluded that "although the available services suffice to meet the need of the present eighteen homes, when an additional forty-nine homes will endanger the well-being of residents both within and contiguous to the development, the statute and regulations authorize the planning board to find the subdivision premature." <u>Garipay</u>, 116 N.H. at 36.

After its view, the HAB determined that it "did not find Middletown Road comparable to the roadways described" in <u>Zukis</u> and <u>Garipay</u>. On appeal, Greatwoods further attempts to distinguish Middletown Road from the roads in those cases. However, as we observed in <u>Garipay</u>, "prematurity is a relative rather than an absolute concept." <u>Id</u>. Furthermore, although the HAB took issue with the idea that "from this moment forward, no residential land can be subdivided on Middletown Road unless further improvements are made to Middletown Road by the Town or by a developer," we have acknowledged that "[a]ny denial of subdivision approval will naturally have the secondary effect of limiting growth." <u>Ettlingen Homes</u>, 141 N.H. at 298 (quotation omitted).

Thus, we determine that the HAB erred in concluding that the Board incorrectly applied the prematurity test and based its decision on concerns of future development. For the reasons set forth in this order, we reverse.

<u>Reversed</u>.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,<br>Clerk**